**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
JOHN T. JASNOCH (CA 281605)
jjasnoch@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508

*Attorneys for Plaintiff*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN GRABISCH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STAMPS.COM, INC., KENNETH MCBRIDE, KYLE HUEBNER, and JEFF CARBERRY,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Alan Grabisch ("Plaintiff"), individually and on behalf of all others similarly situated, through their undersigned counsel, for his Complaint against Defendants Stamps.com, Inc., Kenneth McBride, Kyle Heubner, and Jeff Carberry ("Defendants"), allege the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters based on the investigation conducted by and through Plaintiff's counsel, which included, among other things, a review of Stamps.com, Inc.'s ("Stamps.com" or "the Company") press releases, filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, media reports, and other publicly disclosed reports and information about the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1. This is a securities class action on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased, or otherwise acquired, Stamps.com common stock between May 3, 2017 and February 21, 2019, inclusive (the "Class Period"). This action is brought on behalf of the Class (defined below) for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2.     Stamps.com is a provider of Internet-based mailing and shipping solutions in the United States.   Under the Stamps.com and Endicia brands, Stamps.com customers use United States Postal Service ("USPS") solutions to mail and ship a variety of mail pieces and packages through the USPS.  Customers using Stamps.com solutions receive discounted postage rates compared to USPS.com and USPS retail locations on certain mail pieces.

3.     During the Class Period, Defendants repeatedly touted the Company's purported strong financial results and relationship with USPS.  These statements were false and misleading because they failed to disclose that: (i) the Company's financial results depended on the manipulation of a USPS program that cost USPS an estimated $235 million per year; and (ii) as a result, the Company's business was unsustainable and its financial results were highly misleading.

4.     The truth emerged on February 21, 2019, after the market closed, when Stamps.com held a conference call to discuss its financial results from the 4th quarter of 2018 and fiscal year 2018 as well as its business outlook and "certain strategic items . . . that impact our business outlook for 2019."   On the call, the Company's Chairman and Chief Executive Officer ("CEO"), Kenneth McBride ("McBride") inexplicably stated that the Company was discontinuing its shipping partnership with USPS despite the fact that USPS-related business accounts for 87% of the Company's revenue.  The Company further announced that, contrary to previous expectations of strong growth, 2019 revenue was expected to decline

5.4%.  On this news, the Company's stock plummeted to a close price of $83.65 on February 21, 2019, a decline of over 57% from the previous close price of $198.08.

5.    On February 26, 2019, it was reported that, contrary to McBride's representations, USPS itself had decided to terminate its relationship with Stamps.com in the face of the Company's increasing demands and abuse of the reseller program.

## JURISDICTION AND VENUE

6.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

8.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Stamps.com's principal executive offices are located within this District.

9.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and the facilities of the national securities exchange.

## **PARTIES**

10.     As set forth in the Certification, attached hereto as Exhibit 1, Plaintiff acquired Stamps.com common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

11.     Defendant Stamps.com is incorporated in Delaware, with principal executive offices located at 1990 E. Grand Avenue, El Segundo, California 90245. Stamps.com shares trade on the NASDAQ under the ticker symbol "STMP."

12.     Stamps.com is a provider of Internet-based mailing and shipping solutions in the United States.   Under the Stamps.com and Endicia brands, Stamps.com customers use USPS solutions to mail and ship a variety of mail pieces and packages through the USPS and customers using Stamps.com solutions receive discounted postage rates compared to USPS.com and USPS retail locations on certain mail pieces.

13.     Defendant McBride is, and was at all relevant times, Stamps.com's Chairman and Chief Executive Officer.

14.     Defendant Kyle Huebner ("Huebner") is Stamps.com's President and has been since August 2017.   At all relevant times prior to August 2017, Huebner was Stamps.com's Co-President and Chief Financial Officer.

15.     Defendant Jeff Carberry ("Carberry") is Stamps.com's Chief Financial Officer and has been since August 2017.

16.     The Defendants referenced in ¶¶13-15 above are, at times, referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

17.     Stamps.com became the first USPS-approved PC Postage vendor offering software-only mailing and shipping solutions in 1999.

18.     Under the Stamps.com and Endicia brands, customers use the Company's USPS-approved mailing and shipping solutions to mail and ship a variety of mail pieces and packages through the USPS.  Customers can purchase and print postage twenty-four hours a day, seven days a week, through software or web interfaces.

19.     The Company's solutions allow customers to receive discounts for most USPS mail and packages.

## Materially False and Misleading Statements Issued During the Class Period

20.     During the Class Period, the Company repeatedly touted its purported strong financial results and relationship with USPS.

21.     For example, on May 3, 2017, Stamps.com issued a press release for its 1Q17 results.  The press release stated in relevant part:

"We are very pleased with our continued strong revenue and earnings growth this quarter," said Ken McBride, Stamps.com's chairman and CEO.  "In addition to our overall revenue and earnings growth, during the first quarter we reached our highest

level of paid customers, we saw continued strong growth in our shipping business areas, and we experienced strong contributions from all of our subsidiaries. We remain very excited about our future prospects and, combined with our first quarter performance, led us to increase our guidance for 2017."

22.   The press release further stated:

First quarter 2017 total revenue was $105.0 million, up 28% compared to the first quarter of 2016. First quarter 2017 Mailing and Shipping revenue (which includes service, product and insurance revenue but excludes Customized Postage and Other revenue) was $102.6 million, up 30% versus the first quarter of 2016. First quarter 2017 Customized Postage revenue was $2.4 million, down 7% versus the first quarter of 2016.

First quarter 2017 GAAP income from operations was $34.6 million and GAAP net income was $33.1 million. GAAP net income per share was $1.82 based on 18.2 million fully diluted shares outstanding. This compares to first quarter 2016 GAAP income from operations of $22.2 million and GAAP net income of $13.2 million or $0.71 per share based on fully diluted shares outstanding of 18.7 million. First quarter 2017

GAAP income from operations, GAAP net income and GAAP income per fully diluted share increased by 56%, 150% and 157% year-over-year, respectively.

First quarter 2017 GAAP income from operations included $11.4 million of non-cash stock-based compensation expense and $4.0 million of non-cash amortization of acquired intangibles.  First quarter 2017 GAAP net income also included $93 thousand of non-cash amortization of debt issuance costs. Excluding the non-cash stock-based compensation expense and non-cash amortization of acquired intangibles, first quarter 2017 non-GAAP income from operations was $50.0 million. Also excluding non-cash amortization of debt issuance costs, first quarter 2017 non-GAAP pre-tax income was $49.3 million.   First quarter 2017 non-GAAP income tax expense was $16.0 million, which was $15.3 million higher than the $660 thousand GAAP income tax expense for the quarter.   The higher non-GAAP tax expense reflects the tax impact on the non-GAAP pre-tax income at a non-GAAP effective tax rate of 32.5%, which was materially higher than the actual GAAP effective tax rate for the quarter.   See the section later in this press release entitled "About Non-GAAP

Class Action Complaint for Violations of the Federal Securities Laws

Financial Measures" for more information on how non-GAAP taxes are calculated. Taking into account the non-GAAP adjustments, first quarter 2017 non-GAAP adjusted income was $33.2 million or $1.83 per share based on 18.2 million fully diluted shares outstanding.

23. During the Company's 2Q17 earnings call on August 2, 2017, CEO McBride stated:

> **the partnership with the Postal Service is continuing to be stronger and stronger** and some of the – we have multiple contracts and various partnerships with the Postal Service. And so in this case, we were able to get a couple of our contracts renewed at improved terms.

24. The foregoing statements were false and misleading because they failed to disclose that: (i) the Company's financial results depended on the manipulation of a USPS program that cost USPS an estimated $235 million per year; and (ii) as a result, the Company's business was unsustainable and its financial results were highly misleading.

### The Truth Emerges

25. On February 21, 2019, after the market closed, Stamps.com held a conference call to discuss its financial results from the 4th quarter of 2018 and

fiscal year 2018 as well as its business outlook and "certain strategic items . . . that impact our business outlook for 2019."

26.    On the call, McBride discussed the Company's renewal talks with USPS over its revenue share agreement and claimed that Stamps.com:

> will no longer be exclusive to the USPS and that's nonnegotiable.  USPS has not agreed to accept these terms or any other terms of our partnership proposal.  So, at this point we decided to discontinue our shipping partnership with the USPS so that we can fully embrace partnerships with other carriers who we think will be well positioned to win in a shipping business in the next five years.

27.    The Company further announced that, contrary to previous expectations of strong growth, 2019 revenue was expected to decline 5.4%.

28.    These revelations shocked the market.  On this news, the Company's stock plummeted to a close price of $83.65 on February 22, 2019, a decline of over 57% from the previous close price of $198.08.

29.    The revelation was an inexplicable announcement that the Company was simply walking away from a business relationship that accounted for 87% of the Company's earnings.

30.    On February 26, 2019, it was reported that, contrary to McBride's representations, USPS itself had decided to terminate its relationship with

Stamps.com in the face of Company's increasing demands and abuse of the reseller program.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased, or otherwise acquired, Stamps.com common stock during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure.  Excluded from the Class are the Defendants herein; Stamps.com's officers and directors, at all relevant times; members of their immediate families, and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have, or had, a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Stamps.com common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class.  The members of the proposed Class may be identified from records maintained by Stamps.com, or its transfer agent, and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel that are competent and experienced in class action and securities litigation.  Plaintiff has no interest, antagonism, or conflict with the members of the Class.

35.     Common questions of law and fact exist, as to all members of the Class, and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Stamps.com;

        c.     whether the Individual Defendants caused Stamps.com to issue false and misleading financial statements during the Class Period;

        d.     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e. whether the prices of Stamps.com common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

f. whether the members of the Class have sustained damages, and if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. the omissions and misrepresentations were material;

c. Stamps.com common stock is traded in an efficient market;

d. Stamps.com's shares were liquid and traded with moderate-to-heavy volume during the Class Period;

e.  Stamps.com traded on the NASDAQ and was covered by multiple analysts;

f.  the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Stamps.com common stock; and

g.  Plaintiff and members of the Class purchased, acquired, and/or sold Stamps.com common stock between the time Defendants failed to disclose, or misrepresented material facts, and when the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39.  Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# COUNT I

## Violations of §10(b) of the Exchange Act and
## Rule 10b-5 Promulgated Thereunder
## (Against All Defendants)

40.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

41.   This count is asserted against Defendants and is based upon §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5 promulgated thereunder.

42.   During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly, or recklessly, engaged in acts, transactions, practices, and courses of business, which operated as fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Stamps.com securities; and (iii) cause Plaintiff and other members of the Class to purchase, or otherwise acquire, Stamps.com common stock at artificially inflated prices.  In furtherance of

this unlawful scheme, plan, and course of conduct, Defendants, including the Individual Defendants, took the actions set forth herein.

43.   Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly, or indirectly, in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media, that were designed to influence the market for Stamps.com securities.  Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Stamps.com's finances and business prospects.

44.   By virtue of their positions at Stamps.com, the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed, or refused to ascertain and disclose, such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.   In addition, each Defendant knew, or recklessly disregarded, that material facts were being misrepresented or omitted as described above.

45.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is particularly within Defendants' knowledge and control.   As the senior managers and/or directors of Stamps.com, the Individual Defendants had knowledge of the details of Stamps.com's internal affairs.

46.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to, and did, directly or indirectly, control the content of the statements of Stamps.com.   As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Stamps.com's businesses, operations, future financial condition, and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Stamps.com common stock was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Stamps.com's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased, or otherwise acquired, Stamps.com common stock at artificially inflated prices and relied upon the price of the securities, the integrity of the market, and/or upon statements disseminated by Defendants and were damaged thereby.

47.   During the Class Period, Stamps.com common stock traded on an active and efficient market.   Plaintiff and the other members of the Class, relying

on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Stamps.com common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired common stock at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Stamps.com common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Stamps.com common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of Stamps.com common stock during the Class Period, and were harmed upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**Violations of §20 of the Exchange Act**
**(Against the Individual Defendants)**

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, the Individual Defendants participated in the operation and management of Stamps.com and conducted and participated, directly and indirectly, in the conduct of Stamps.com's business affairs.  Because of their senior positions, they knew the adverse non-public information alleged herein.

52.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Stamps.com's financial condition and operations, and to promptly correct any public statements issued by Stamps.com that became materially false or misleading.

53.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings that Stamps.com disseminated in the marketplace during the Class Period concerning Stamps.com's financial results and business relationships.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Stamps.com to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Stamps.com within the meaning of §20(a) of the Exchange Act.  In this

capacity, they participated in the unlawful conduct alleged herein that artificially inflated the market price of Stamps.com common stock.

54.     Each of the Individual Defendants, therefore, acted as a controlling person of Stamps.com.   By reason of their senior management positions and/or being directors of Stamps.com, each of the Individual Defendants had the power to direct the actions of the Company and exercised the same power to cause Stamps.com to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Stamps.com and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

55.     By reason of the above conduct, the Individual Defendants are liable, pursuant to §20(a) of the Exchange Act, for the violations committed by Stamps.com.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Declaring that the instant action may be maintained as a class action, under Fed. R. Civ. P. 23, and certifying Plaintiff as Class Representative;

B.     Awarding Plaintiff and the other members of the Class compensatory damages;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D.     Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

### <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated:  February 28, 2019

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

*/s/ John T. Jasnoch*
JOHN T. JASNOCH (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com

Thomas L. Laughlin, IV
Rhiana L. Swartz
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

*Attorneys for Plaintiff*

Class Action Complaint for Violations of the Federal Securities Laws